THE STATE, ex rel. WARING, vs. THE MAYOR, ALDERMEN, &c., OF MOBILE.

| 24 | 701 |
| 123 | 664 |

1. Where a decree has been rendered against the corporate authorities of a city for the abatement of a public nuisance, on an information in the name of the State at the relation of certain citizens, any citizen may interfere as relator, by a proceeding in the nature of a bill of revivor, and call on the court to carry the decree into execution.

2. Whether the statute requiring the revival of a judgment by a *scire facias*, when no execution was issued within a year and a day after its rendition (Clay's Digest 206 § 28), applies to a decree in chancery for the abatement of a public nuisance, on information filed in the name of the State at the relation of certain citizens, *quære* ? But if it does apply, its only effect is, to compel the party seeking to enforce the decree to proceed by bill of revivor or *scire facias*.

3. The written opinion of the presiding judge, when the circuit judges were required to file their opinions in writing, was sufficient to authorize the rendition of a judgment *nunc pro tunc* at any subsequent stage of the proceedings; and if it recited the fact of the defendant's appearance, it would be sufficient to sustain the judgment without service of process.

4. On a bill filed to enforce the execution of a decree, if the record shows sufficient to authorize an amendment of the decree *nunc pro tunc*, by reciting the fact that the defendant therein appeared although not served with process, the court will consider the amendment as made, and will sustain the former decree.

5. There are cases where a court of equity, on a bill filed to enforce the execution of a decree, will refuse to enforce the decree if it is unjust ; but this will not be done when the proceeding is in the nature of a bill of revivor.

6. Where a municipal corporation is purely political in its character, and intended solely for the local government of a city, its charter may be amended, and its name changed, while the corporation itself remains the same.

7.   Where a statute does not, in express terms, annul a right or power given to a corporation by a former act, but only confers the same rights and powers upon it under a new name, and with additional powers, the latter act does not repeal the former.

APPEAL from the Chancery Court at Cahaba, to which the cause had been transferred from the Mobile Chancery Court.

HEARD before the Hon. JAMES B. CLARK.

P. HAMILTON and GEORGE N. STEWART, for appellants.

JOHN T. TAYLOR, *contra*.

(No briefs have come to the Reporter's hands.)

GOLDTHWAITE, J.—It appears from the record, that in 1836 an information was filed by the solicitor of the Mobile Circuit in the name of the State, on the relation of certain individuals, against the mayor and aldermen of the City of Mobile, to enjoin the erection of certain markets, then building in Government street in that city, and to abate and cause to be removed them, and others at that time erected.   In May, 1839, a final decree was rendered, declaring that the market house buildings and obstructions as set forth in the bill were a nuisance ; that a perpetual injunction issue, and that the nuisance be abated by the defendants.— The decree remained unexecuted until October, 1852, when Moses Waring and others applied by petition to the Court of Chancery, to have the decree executed by the mayor, aldermen and common council of Mobile, on whom a rule was served to show cause, and who appeared, and in their answer objected to the execution of the decree on the following grounds :

1. That the relators had no right to prosecute the decree.

2. That the statute (Clay's Digest 206 § 28) is a bar to the prosecution of the same.

3. That the court which rendered the decree had no jurisdiction ; that the corporation against which it was rendered had never been made a party and never appeared, and that no decree *pro confesso* had been passed.

4. That the allegations contained in the information, on which the decree was rendered, were untrue.

5. That the corporate authorities of Mobile, as then consti-

JUNE TERM, 1854.                703

The State, ex rel. Waring, v. The Mayor, Aldermen, &c., of Mobile.

tuted, were not the corporation against which the decree was rendered, but are a new corporation, created by the act of 1844.

6. That the State, by the act of 1844, waived all its rights under the decree, and sanctioned the use of the market by the corporation.

As to the right of the petitioners to prosecute the decree, it is only necessary to observe, that the present proceeding is in the nature of a bill of revivor to carry a decree into execution ; and it is not necessary, in all cases, that bills of this character should be filed by the same persons who were parties to the original decree. It may, sometimes, be exhibited by one outside of the record, but who claims in a similar interest.—3 Dan. Ch. Pr. 1689, 1690. Here, the decree was for the abatement of a public nuisance ; and as the rights of the State were immediately and directly concerned, the law officer of the State might well have proceeded upon his own authority, without the intervention of any other person as relator.—1 Dan. Ch. Pr. 11. The only necessity for a relator being connected with the proceedings, in such case, is, that there may be a party responsible for the costs, and the conduct of the case ; but when the act ascertained by the proceeding is one detrimental to the public, and of a character which is punishable by indictment as a public nuisance, and when the object of the decree is to abate this evil—upon principle, every one who is a member of the community, whose interests are supposed to be prejudiced by it, is concerned in its abatement, and may, therefore, with propriety, call upon the court to enforce its decree.

We doubt whether the statute of 1835 (Clay's Digest 206 § 28) has any application to the case before us, for the reason, that the State is the party complaining, and because no length of time will confer a right to maintain a public nuisance (Mills v. Halls, 9 Wend. 315). But it is unnecessary to go thus far ; for, conceding that the statute does apply, under the construction given to it in Van Cleave v. Haworth, 5 Ala. 188, a judgment may be revived by *scire facias*, upon which no execution has been sued out for ten years ; and in such case, no greater presumption of satisfaction arises, than if it had not been sued out for a year and a day after its ren-

dition. Under such circumstances a release is presumed; and therefore the defendant shall not be disturbed without being called upon, and having an opportunity of pleading the release, or showing cause, if he can, why execution should not go.—2 Tidd's Pr. 1003. This proceeding is, as we have said, in the nature of a bill of revivor, or *scire facias*. It calls upon the defendant to show cause why the decree should not be enforced ; and the utmost effect the statute can have, in any case, is to force the party seeking the benefit of the decree to pursue this course before enforcing it, but it goes no further.

That the court which rendered the decree had jurisdiction of the subject-matter, was expressly decided by this court when the case was last here (5 Port. 279 ; and see also, upon this point, Atty. Gen. v. Hoole, 22 Ala. 190); and although we do not think the decree could be carried into execution, upon a bill filed for that purpose, if it appeared that the defendants were not before the court in the former proceedings, we do not understand such to be the case here.— The record of the proceedings previously had, shows that a motion was made by the defendants to dismiss for want of jurisdiction, and was sustained by the judge then presiding, and this decree was subsequently reversed by the Supreme Court. The law then in force required the judge to render his decree in writing (Aik. Dig. 288 § 19), which was done ; and in that decree he states, that the defendants to the information appeared before him and made the motion, In the record the decree is embodied in the opinion, and no formal entry appears to have been made ; but we regard this omission as altogether immaterial, as the opinion of the judge in writing would have been sufficient to have authorized the entry *nunc pro tunc*, at any subsequent stage of the proceedings.—Andrews v. The Bank, 10 Ala. 375. And we have often held, that an entry of record, reciting the fact of the defendant's appearance, was sufficient to sustain the judgment, without service of process.—Gilbert v. Lane, 3 Port. 267 ; Hobson v. Emanuel, 8 *ib.* 442 ; Moore v. Phillips, *ib.* 567. As this amendment could properly have been made, a court of equity will regard it as done, and, without delaying the cause, give the same effect to the statement of the fact in

JUNE TERM, 1854. 705

The State, ex rel. Waring, v. The Mayor, Aldermen, &c., of Mobile.

writing, by the judge, as the Chancellor would have given, had the motion been made. As to the ground taken in the answer, that no decree *pro confesso* was rendered, it is unnecessary to say anything, as the record shows that such a decree was passed, before the final decree was rendered.

Neither can the objection taken to the merits of the decree be sustained. There are cases where the common process of the court will not serve, and an original bill is required, and a second decree upon that, before the first can be executed; and in these cases, if the first decree is unjust, a court of equity will not charge its conscience with promoting an apparent injustice, and, as the whole case is open, may well refuse to carry the decree into execution.—Lawrence v. Berney, 2 Ch. Rep. 127; Pr. in Ch. 134; Atty. Gen. v. Day, 1 Ves. 218. But no such case is made here. The proceeding is in the nature of a bill of revivor, rather than an original bill; and the right of a party to prosecute the decree, and to do what is necessary for that purpose, does not depend upon the merits of the decree.—Story's Equity Pleadings, § 370 a.

As to the question, whether the corporate authorities of Mobile, as at present constituted, are the same corporation against which the decree was rendered, we have no difficulty. The corporation against which the decree was rendered, was created by the act of 1819 (Toulmin's Digest 784); and as it was purely political in its character, and intended solely for the local government of the City of Mobile, it was competent for the Legislature not only to amend, but to abrogate its charter.—People v. Morris, 13 Wend. 325; The Governor v. McEwen, 5 Humph. 241. But it will be apparent from an examination of the act of 1844, that that statute was not intended to repeal the former act, but simply to reorganize the corporation which was existing under that act, and to amend its charter. The first incorporated the inhabitants of Mobile, by the name of the mayor and aldermen of the City of Mobile; and by it the powers deemed necessary for the government of the city, were vested in the mayor and aldermen. The act of 1844 created no new incorporation: the persons who were incorporated under the first statute, remained incorporated under the

last. A change was made, it is true; a board of common council-men were added to the city authorities, and the governmental powers were given to the mayor, aldermen and common council, instead of the mayor and aldermen, and the name of the corporation was altered, but the corporation itself remained the same. It was the inhabitants of Mobile who were incorporated by the first act, and this provision was in no wise changed or affected by the last. No alteraation was made in the body politic; and, as was correctly said by the Chancellor, "it was the same identical personage who violated the law of 1820, which was an amendment of the act of 1819, who was required to show cause why the decree should not be enforced."

The only remaining question presented, is, whether by the act of 1844 the State waived its right to the enforcement of the decree; or, in other words, whether that act operated as a repeal of the law which fixed the width of Government street at one hundred feet, and consequently made it a nuisance for any one to diminish its width, by any obstruction. 5 Port. 279. The Chancellor was of the opinion, that the provision referred to, contained in the act of 1820 (Toulmin's Digest 791), was repealed by the forty-sixth section of the act of 1844 (Acts of 1843–4, p. 190), containing the same provision; and in this respect his opinion was erroneous.— The last statute is precisely what is indicated by its title, that is, "An act to consolidate the several acts of incorporation of the City of Mobile, and to alter and amend the same." Where a statute does not, in express terms, annul a right or power given to a corporation by a former act, but only confers the same rights and powers under a new name, and with additional powers, such subsequent act does not annul the rights and powers given under the former act, and under its former name.—Commonwealth v. Worcester, 3 Pick. 474.— The plain object of the Legislature, in the act of 1844, as is shown by the body of the act, as well as its title, was not only to alter and amend, but to consolidate and reduce into one, the several provisions of the former acts of incorporation. The corporation, as we have seen, was not changed; and to hold that the insertion of the same provision in the new act, which is contained in the old, was a repeal of the

latter, would be to defeat the intention of the Legislature, whose object was not repeal, but consolidation.   Indeed, so far from the provision in the new act operating to annul the same provision in the old, we think it was inserted in the last act to show the more clearly that it was intended to be kept alive.

This disposes of all the questions presented upon the record. The Chancellor, instead of dismissing the proceeding, should have rendered a decree, reviving the former decree, and directing the same to be carried into execution; and the case must be reversed and remanded, in order that such decree may be rendered.   The appellants must pay the cost of this court.